IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOHN DOE, ) | |
| ) | |
| Plaintiff, ) | Case No. |
| ) | |
| vs. ) | **COMPLAINT** |
| ) | |
| SEATTLE UNIVERSITY, ) | **(INJUNCTIVE RELIEF AND JURY** |
| ) | **TRIAL REQUESTED)** |
| Defendant. ) | |
| ) | |
| ) | |
| ) | |
| ) | |

Plaintiff John Doe, by and through counsel, for his cause of action against Defendant

SEATTLE UNIVERSITY, alleges as follows:

## I.      JURISDICTION AND VENUE

1.      This action arises under 42 U.S.C. § 1983, 20 U.S.C. § 1681(a), and the U.S.

Constitution.  This Court has subject matter jurisdiction under 28 U.S.C. § 1331.  This Court

further has authority to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

COMPLAINT FOR DAMAGES - 1

**Law Offices of Howard L. Jacobs**
31111 Agoura Road Ste. 225
Westlake Village, CA
(805) 418-9892 (phone)
(805) 418-9899 (facsimile)

2.      Venue is proper under 28 U.S.C. § 1391(b).  Defendant is sued in its official capacity and its official place of business is located within this District.  All acts and/or omissions giving rise to the claims occurred in this District.

## II.      PARTIES

3.      Plaintiff John Doe is a 19-year-old resident of King County, Washington, and is pursuing his Bachelor of Arts at Defendant Seattle University, and is currently a sophomore (second year student).  Plaintiff is also a member of the Seattle University baseball team, for which he receives a significant partial scholarship of $18,000.00 annually.

4.      Plaintiff seeks leave to proceed under a pseudonym due to fear of personal embarrassment, humiliation, and psychological trauma.  Specifically, Plaintiff has been falsely accused of acts that, if true, would constitute sexual assault.  No criminal charges have been brought against Plaintiff.  The harm to Plaintiff would be compounded by the publication of his identity.

5.      Defendant Seattle University is a Washington State Nonprofit Corporation with its principal office at 901 12th Avenue, Seattle, Washington 98122-4411.

## III.      FACTUAL ALLEGATIONS

### A.      Background

6.      Plaintiff, John Doe, is a male undergraduate student at Seattle University.  He is a kinesiology major and rising member of the Seattle University Baseball Team.

7.      In the fall of 2021, Plaintiff began his sophomore year.  At the time, Plaintiff lived on-campus in Bellarmine Hall with Witness D, his former roommate.

8.      The alleged victim ("alleged victim") is also a sophomore undergraduate student at Seattle University.  Plaintiff met alleged victim through an online dating app near the end of

COMPLAINT FOR DAMAGES - 2

**Law Offices of Howard L. Jacobs**
31111 Agoura Road Ste. 225
Westlake Village, CA
(805) 418-9892 (phone)
(805) 418-9899 (facsimile)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

August 2021 and went on to become close friends.  Alleged victim and Plaintiff were members of the same tight-knit circle of friends.

9.     Alleged victim lived on-campus during the fall of 2021.  Plaintiff would frequently spend time at alleged victim's apartment with alleged victim and her roommate, Witness C. According to both Plaintiff and alleged victim, their relationship was entirely platonic.  Plaintiff would stay overnight at alleged victim's apartment.  They would party and drink alcohol together with friends.  Alleged victim would party and get intoxicated multiple times a week.  On one occasion, alleged victim drank until she was blacked out and vomiting blood.  Plaintiff cared for alleged victim and called the paramedics, and he and Witness C slept in the same room as alleged victim to ensure she was okay.

**B.     The October 31, 2021 Alleged Incident**

10.     On October 30, 2021, Plaintiff attended two off-campus Halloween parties with other students from Seattle University.  Before attending these parties, Plaintiff consumed a few alcoholic beverages in his apartment with several friends.

11.     Plaintiff invited alleged victim to the second Halloween party.  Alleged victim attended the Halloween party and briefly interacted with Plaintiff.  Plaintiff introduced alleged victim to his date, Witness F.  Plaintiff and Witness F then left the party and returned to Plaintiff's apartment around midnight where they engaged in consensual intimate activity before Witness F departed to her own apartment[1].

12.     Around 2:00 AM on October 31, 2021, Plaintiff and alleged victim had a conversation via FaceTime.  Alleged victim was at a different party.  According to Plaintiff's

---

[1] Plaintiff explained that he and Witness F had sexual intercourse, which Witness F puzzlingly denied – perhaps from embarrassment from her involvement in this process, or because neither "finished" due to the impact of alcohol on Plaintiff's ability to engage in intimate activity.

**Law Offices of Howard L. Jacobs**
31111 Agoura Road Ste. 225
Westlake Village, CA
(805) 418-9892 (phone)
(805) 418-9899 (facsimile)

interview transcript, alleged victim told Plaintiff, " . . . I hate it here right now. I don't want to be here." Plaintiff told alleged victim, ". . . You can come over to my place if you want." Alleged victim walked over to Plaintiff's apartment and arrived "doing a drunk prance." Alleged victim recalled sitting on Plaintiff's bed and talking to him for an hour or two before deciding to stay the night with Plaintiff. Both Plaintiff and alleged victim were intoxicated.

13. Prior to her arrival to Plaintiff's dorm room, alleged victim recalled bringing her own bottle of alcohol to the party she attended, in addition to consuming "Smirnoff Ices" and "White Claw" hard seltzers. Plaintiff and alleged victim fell asleep without engaging in any sexual contact. No other witnesses were present.

14. Alleged victim claimed that while she was asleep at Plaintiff's dorm room, he allegedly initiated contact with her legs, hips, breasts, and genitals over and under her clothes. Alleged victim did not have any clothing removed. Alleged victim gave conflicting accounts of how she recalled this incident taking place. She claimed to have been asleep, yet conscious to the contact, yet unable to move or open her eyes. She claimed to have been "in and out of consciousness" and "paralyzed," but asserted that alcohol was not at all a factor in her ability to respond or accurately recall the incident. Plaintiff does not recall initiating contact with alleged victim in any fashion. Of note, alleged victim admitted, "When I first woke up, I didn't remember anything of the night before." In fact, when alleged victim returned home from Plaintiff's apartment, alleged victim told her roommate that she did not think she even slept in the same bed as Plaintiff.

15. On October 31, 2021, Plaintiff and alleged victim woke up sharing Plaintiff's bed. Plaintiff recalls alleged victim had her arms wrapped around Plaintiff. It is undisputed that alleged victim was fully clothed, and Plaintiff was wearing his customary sleep attire of gym shorts and

COMPLAINT FOR DAMAGES - 4

no shirt.  Plaintiff offered alleged victim some water.  They spent approximately 30 minutes to an hour recapping their night in a light-hearted, joking manner.  As confirmed by multiple witnesses, Plaintiff and alleged victim also sent photos of themselves cuddling in bed to friends via Snapchat that morning.  Alleged victim did not recall sending Snapchats or taking photos with Plaintiff until *after* her friends specifically asked about the photos.  Witness A recalled Plaintiff Face Timed her with alleged victim still in his room.  Alleged victim did not recall this FaceTime call until *after* Witness A brought it up to her.  At least one witness asked Plaintiff if any sexual activity had occurred with alleged victim, to which Plaintiff denied.  Plaintiff recalled asking alleged victim if anything occurred between them.  Alleged victim confirmed that nothing had happened.  Alleged victim left Plaintiff's residence without issue and without any mention of alleged sexual contact.

16.     That same morning, Plaintiff joined alleged victim and some friends for breakfast at a Seattle University dining hall.  There was no tension between Plaintiff and alleged victim.

17.     Alleged victim claimed it was not until after breakfast when her roommate started to ask her questions about the night before that "it started to spark her memory" of the alleged incident.  As admitted by alleged victim, she only "started to realize" the alleged incident occurred *after* being prompted by Witness C.

18.     Alleged victim also visited her therapist, which further influenced her recollection of the alleged incident.  After talking with her therapist, alleged victim determined that her body froze up during this alleged encounter because Plaintiff was a close friend.  Of note, alleged victim has never experienced this state of temporary paralysis outside of the alleged incident with

COMPLAINT FOR DAMAGES - 5

Law Offices of Howard L. Jacobs
31111 Agoura Road Ste. 225
Westlake Village, CA
(805) 418-9892 (phone)
(805) 418-9899 (facsimile)

Plaintiff, and was unable to determine the cause of her temporary paralysis prior to seeing a therapist[2].

19.     Witness C stated that alleged victim first disclosed the alleged incident to her. Witness C stated that at the outset, alleged victim made a general allegation along the lines of "I think he touched me." From there, Witness C and alleged victim met with Witness B and discussed the situation in their apartment. According to Witness C, once Witness B got involved, alleged victim then "started to remember more specifics and stuff." Witness C reflected that alleged victim's sudden recollection of the events at issue was "odd." Witness B indicated that alleged victim could not recall specific details until she wrote it down.

**C.     The Alleged Code of Conduct and Title IX Violations**

20.      On November 1, 2021, Plaintiff received a letter from The Office of Student Conduct and Integrity Formation notifying him of alleged Code of Student Conduct violations related to the consumption of alcohol on university premises while under 21 years of age.

21.     On November 2, 2021, Defendant Seattle University issued a 90-day No Contact Directive preventing Plaintiff and alleged victim from communicating.

22.     On November 5, 2021, Plaintiff received a Notice of Allegations from the Office of Institutional Equity alleging that "on October 30, 2021 [Plaintiff] sexually assaulted [alleged victim] in Bellarmine Hall located on the campus of Seattle University." The Notice letter stated that the alleged conduct could constitute a violation of the Title IX Policy on Sexual Violence and Sexual Harassment.

---

[2] It is well known that alcohol and drugs have significant effects on false memory and suggestibility. It appears, in this case, alleged victim was susceptible to one or both. See Kloft et al. <u>Hazy memories in the courtroom: A review of alcohol and other drug effects of false memory and suggestibility</u>. Neurosci. & Biobehavioral Reviews. Vol. 124 (May 2021) pp. 291-307.

**Law Offices of Howard L. Jacobs**
31111 Agoura Road Ste. 225
Westlake Village, CA
(805) 418-9892 (phone)
(805) 418-9899 (facsimile)

23.     Specifically, alleged victim accused Plaintiff of "touch[ing] the complainant's private areas . . . without her consent." Alleged victim claimed that "she was unable to give consent due to being incapacitated (asleep)."

24.     The allegations alienated Plaintiff from his friend group.  His roommate, Witness D, asked him to find new housing.  Outside the Seattle University locker rooms, Plaintiff was verbally assaulted by a university soccer player who is a former significant other of alleged victim. The situation at Seattle University became so hostile that Plaintiff was forced to remove himself from campus.

25.     Enclosed with the Notice of Allegations was Seattle University's Title IX Policy for Complying with the Title IX Regulations ("Title IX Policy"), which "only appl[ies] to sexual harassment alleged to have occurred on or after August 14, 2020" (i.e., the "Effective Date").

26.     Seattle University's Title IX Policy stated: "If a party does not submit to cross-examination, as described below, the decision-maker cannot rely on any prior statements made by that party in reaching a determination regarding responsibility, but may reach a determination regarding responsibility based on evidence that does not constitute a 'statement' by that party." A "prior statement" does not include "a document, audio recording, audiovisual recording, and digital media, including but not limited to text messages, emails, and social media postings, that constitute the conduct alleged to have been the act of sexual harassment under the formal complaint."

27.     With respect to witnesses, the Title IX Policy stated: "If a witness does not submit to cross-examination, as described below, the decision-maker cannot rely on any statements made by that witness in reaching a determination regarding responsibility, including any statement relayed by the absent witness to a witness or party who testifies at the live hearing."

COMPLAINT FOR DAMAGES - 7

**Law Offices of Howard L. Jacobs**
31111 Agoura Road Ste. 225
Westlake Village, CA
(805) 418-9892 (phone)
(805) 418-9899 (facsimile)

28.     With respect to Decision-makers, the Title IX Policy stated: "Decision-makers will not include anyone who has also served as the Title IX Coordinator, Title IX investigator, or advisor to any party in the same case, nor will a decision-maker at the hearing serve at the appeals level of the case. . . . No decision-maker will have a conflict of interest or bias in favor of or against complainants or respondents generally, or in favor or against the parties to the particular case."

29.     The Notice of Allegations identified the following available grounds for appeal:

1.  Procedural irregularity that affected the outcome of the matter (i.e. a failure to follow the institution's own procedures);

2.  New evidence that was not reasonably available at the time the determination regarding responsibility or dismissal was made, that could affect the outcome of the matter;

3.  The AVP for OIE/Title IX Coordinator, investigator(s), or decision-maker(s) had a conflict of interest or bias for or against an individual party, or for or against complainants or respondents in general, that affected the outcome of the matter.

30.     On November 8, 2021, Seattle University Title IX Coordinator Jill Moffitt sent Plaintiff and alleged victim a Notice of Investigation.  Ms. Moffitt retained investigator Trish Murphy of Northwest Workplace Law to conduct the investigation of the allegations made by alleged victim.

31.     On November 15, 2021, Plaintiff received a Decision letter from Anton Ward-Zanotto, Assistant Dean of Students at Seattle University, regarding the alleged Code of Conduct violations for consuming alcohol on campus.  Mr. Ward-Zanotto placed Plaintiff on a "Disciplinary Warning," effective November 15, 2021 through November 15, 2022.  Mr. Ward-Zanotto was the sole investigator and decision-maker in Plaintiff's alleged Code of Conduct violation.

COMPLAINT FOR DAMAGES - 8

32.     Plaintiff specifically recalls Mr. Ward-Zanotto bringing up alleged victim's allegations during the investigation for the alcohol Code of Conduct violation.  That meeting was held via Zoom.

33.     From November 17, 2021, through February 25, 2022, Ms. Murphy conducted interviews of Plaintiff, alleged victim, and witnesses regarding the alleged Title IX violations.

34.     On January 18, 2022, Ms. Murphy sent Plaintiff an email confirming initiation of the 10-day evidence review period by Plaintiff, in which she also confirmed the University's Title IX policy in effect was the same as the version communicated to Plaintiff by Ms. Moffitt.

35.     Inexplicably, Ms. Murphy did not interview several persons that spent time with Plaintiff and alleged victim on October 30 and October 31, 2021.

**D.     The Delayed and Defective Title IX Hearing**

36.     On February 24, 2022, Defendant's Title IX Coordinator Ms. Moffitt sent an email to Plaintiff apologizing for causing a delay in his case.  She wrote, "The Investigator had reached out to me requesting that I contact another person who was identified in the evidence response period and I just now, today, sent that email to the person. I normally do this right away, but in this case the request did not register and in looking back at the email I realized I had not done this." The Title IX Coordinator neglected to contact a witness provided by Plaintiff at the outset of the investigation.

37.     Finally, on March 3, 2022, Investigator Murphy submitted her final investigation report to the decision-maker regarding the alleged Title IX violations.  The Title IX hearing was scheduled for March 28, 2022.

38.     On March 21, 2022, Plaintiff received an email from Ms. Moffitt acknowledging that both the Seattle University Title IX Policy and the Code of Conduct handbook make "no

COMPLAINT FOR DAMAGES - 9

**Law Offices of Howard L. Jacobs**
31111 Agoura Road Ste. 225
Westlake Village, CA
(805) 418-9892 (phone)
(805) 418-9899 (facsimile)

mention of the Cardona ruling." Ms. Moffitt claimed that the policy and handbook "did not get updated as [she] had thought/requested in August 2021." Ms. Moffitt went on to state that "for the record, . . . despite this error in the policy revision, Seattle University will be following the rules and regulations outlined in the Cardona Ruling and supported by the *Department of Education Office of Civil Rights* as it relates to the Title IX Final Rule Regulations." However, no further explanation was provided.

39.     Also on March 21, 2022, Plaintiff sent Ms. Moffitt an email confirming that one of his witnesses never received an email regarding Plaintiff's hearing.

40.     On March 28, 2022, Plaintiff had his Title IX hearing. The sole decision-maker in Plaintiff's Title IX hearing was Mr. Anton Ward-Zanotto—who *also* served as the sole decision-maker in Plaintiff's Code of Conduct hearing related to alcohol consumption, for which Mr. Ward-Zanotto sanctioned Plaintiff with a year-long Disciplinary Warning and required him to complete online courses on Alcohol Sanctions.

41.     Plaintiff and alleged victim participated in the March 28, 2022 Title IX hearing. Plaintiff denied any wrongdoing. Notably, only three of the seven witnesses participated in the hearing. Despite Seattle University's Title IX Policy prohibiting decision-makers from considering the testimony of non-participating witnesses, Mr. Ward-Zanotto considered the statements and credibility of *all* witnesses involved in the matter. In any event, Mr. Ward-Zanotto's "Credibility Analysis" of the witnesses reached incompatible conclusions, examples of which are summarized below:

a.     Witness D did not participate in the hearing, and was not present at Seattle University at the time of the alleged incident. In his interview with Investigator Murphy, Witness D admitted that he "never spoke" with Plaintiff about the incident but had the opportunity to speak

COMPLAINT FOR DAMAGES - 10

1    with alleged victim about the incident and read her written recollection of the alleged misconduct.

2    Witness D closed his interview with the caveat that "everything I know is what I've heard from

3    others." Mr. Ward-Zanotto found: "Although Witness D's testimony regarding Respondent's level

4    of intoxication is based on what he heard from Respondent, Witness D's description of

5    Complainant's experience aligns with other testimonies. I determined that Witness D's testimony

6    was credible because it aligned with other evidence provided in the hearing and in other

7    testimony." Hence, Mr. Ward-Zanotto discredited Witness D's statements regarding Plaintiff's

8    level of intoxication because they came directly from Plaintiff, while at the same time finding

9    Witness D's description of Complainant's experience credible—even though Witness D's only

10   knowledge of that description came directly from Complainant. Furthermore, Mr. Ward-Zanotto

11   entirely discredited Witness D's concerns over Claimant's credibility and behavior, even though

12   Witness D would have no motivation to lie in his testimony, and is heavily involved in student life

13   on campus.

14           b.      Witness A did not participate in the hearing, but provided statements during

15   her interview regarding her interactions with Plaintiff and Complainant the morning after the

16   alleged incident. In addition to confirming that she received a Snapchat of Plaintiff and

17   Complainant in bed, Witness A stated that they both denied engaging in any sexual activity during

18   a FaceTime call that same morning. Witness A also recalled that "nothing seemed awkward" and

19   that Complainant "was completely fine" at breakfast. Although Witness A spoke with *both*

20   Plaintiff and Complainant about the night of the alleged incident, Mr. Ward-Zanotto's "Credibility

21   Analysis" only found credible that "Witness A described the receipt of a Snapchat picture

22   including both parties and that they all went to breakfast in the Cherry Street Market."

**Law Offices of Howard L. Jacobs**
31111 Agoura Road Ste. 225
Westlake Village, CA
(805) 418-9892 (phone)
(805) 418-9899 (facsimile)

c.      Witness B did not participate in the hearing, but provided statements during her interview with Investigator Murphy about Complainant's recollection of the incident.  Witness B's understanding of the incident was based off Complainant's written statement and a conversation in her dorm with Complainant and Witness C, where Witness B stated that Complainant "couldn't remember exactly what happened" and "didn't really remember . . . until later on when she had time to process what happened and she wrote it down."  Witness B also stated that Plaintiff denied having any sexual activity with Complainant the morning after the alleged incident.  However, Mr. Ward-Zanotto's "Credibility Analysis" of Witness B only found credible Witness B's "description" of the alleged incident (as provided by Complainant) and "her experience sitting with Complainant and hearing the description."

d.      Likewise, Witness F did not participate in the hearing.  In assessing Witness F's credibility, Mr. Ward-Zanotto wrote:  "Witness F's description of her sexual encounter with Respondent was inconsistent with Respondent's description. Witness F indicated that there was not a sexual encounter, and that she was never alone with Respondent. . . . I did not rely on Witness F's testimony because it did not provide insight into whether or not Respondent engaged in sexual misconduct with Complainant. I was unable to determine whether Witness F was credible because there was not additional evidence to prove or disprove her statements, and she was not available for further questioning during the hearing."  Like Plaintiff and Complainant, Witness F's memory of that night was affected by alcohol.

e.      Of the witnesses who did participate in the hearing, the Hearing Officer's evaluation of their credibility was equally inconsistent.  The Hearing Officer dismissed Witness E's recollection of her interactions with Complainant on the night in question because Witness E had not interacted with Complainant before the night in question.  However, Witness E had first-

**Law Offices of Howard L. Jacobs**
31111 Agoura Road Ste. 225
Westlake Village, CA
(805) 418-9892 (phone)
(805) 418-9899 (facsimile)

hand interactions with Complainant that evening and had a clear recollection of Complainant's behavior that night.  Witness E recalled that alleged victim was "very clearly drunk" and was "not fully" making sense before arriving to Plaintiff's apartment.  Rather than affording Witness E's firsthand knowledge of underlying events proper weight, the Hearing Officer determined that he "could not rely on Witness E's testimony" regarding Complainant's state of intoxication.

f. Conversely, the Hearing Officer found Witness G's testimony to be credible, solely on the basis that he has known Complainant longer.  Witness G admitted to having a scarce memory regarding his interactions with Complainant that night, stating that "there wasn't anything that I really remember."  Witness G and Witness E both accompanied alleged victim on her walks to various apartments on October 31, 2021.  Both Witness G and Witness E had firsthand knowledge of alleged victim's behavior and level of intoxication that night.  Yet, whereas the Hearing Officer "could not rely" on Witness E—who had a clear recollection of her interactions with alleged victim—the Hearing Officer found Witness G credible due to his observations "based in directly observed behaviors."

42. The Hearing Officer's inconsistency in determining credibility and weighing testimony had a substantial effect on the outcome of the hearing.  On April 22, 2022, Plaintiff received his Title IX Hearing Decision Letter.  The letter stated:

> Based on [Mr. Ward-Zanotto's] consideration of the evidence considered at the hearing, and all of the statements made during the hearing, as well as a review of the Title IX Policy, the Hearing Officer has made the following findings, by a preponderance of the evidence:
>
> 1.  ***Sexual Assault: Responsible***
> 2.  ***Sexual Offense: Responsible***

COMPLAINT FOR DAMAGES - 13

Mr. Ward-Zanotto issued the following sanctions:

- ○ ***Suspension from the University until September 20, 2022.***
- ○ ***Administrative Hold***
- ○ ***Campus Access Restriction***
- ○ ***Disciplinary Probation from September 21, 2022 through September 21, 2023.***
- ○ ***Educational Sanctions due June 10, 2022 including:***
    - ▪ ***Teaching Responsible Alcohol Choices (TRAC) 2***
    - ▪ ***TRAC 2 Fee ($150)***
      ***Statement of Purpose***

43.     To summarize, the Hearing Officer's Credibility Analysis revealed that only those witnesses that corroborated alleged victim's narrative, even in limited fashion, were found "credible," whereas Plaintiff's narrative and any other witnesses who contradicted alleged victim were dismissed for reasons incompatible with the rest of the hearing officer's analysis.

44.     Moreover, the Hearing Decision indicates that Defendant and the Hearing Officer treated Plaintiff, a male student accused of sexual misconduct, differently than alleged victim and those witnesses sympathetic to her story.  In other words, Defendant and the Hearing Officer's decision were motivated by gender bias.

45.     Finally, because the outcome of the investigation was delayed, which has now left Plaintiff facing suspension and cancellation immediately before the completion of the school year. Defendant's delay has severely impacted Plaintiff's property interest in his education.

**E.     Plaintiff's Appeal of the Initial Decision**

46.     On April 29, 2022, Plaintiff appealed Mr. Ward-Zanotto's decision, citing:  (1) Procedural Error; (2) Actual Conflict of Interest; and (3) Substantially Disproportionate Sanctions.

47.     There is no question that the Hearing Officer committed procedural error by relying on statements made by witnesses who did not participate in the March 28, 2022 hearing.  As admitted by Defendant's Title IX Coordinator Ms. Moffitt, Defendant's Title IX Policy *did not get*

COMPLAINT FOR DAMAGES - 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*updated* in August 2021 to reflect the Cardona ruling.  Defendant attempted to excuse this clear procedural error by pointing to a single email it sent to Plaintiff on March 21, 2022—one week before the hearing—that stated, "[D]espite this error in the policy revision, Seattle University will be following the rules and regulations outlined in the Cardona Ruling and supported by the Department of Education Office of Civil Rights as it relates to the Title IX Final Rule Regulations."

48.     Defendant has not articulated a basis for its assertion that it was able to incorporate this significant and material change to its school-wide Title IX Policy (which had been in effect since August 14, 2020, i.e., over 18 months) by virtue of the *single email* it sent to Plaintiff. Plaintiff had a reasonable expectation to believe Defendant would follow its own rules pursuant to its Title IX Policy.

49.     Defendant contends that its procedural error was "harmless," because "there was no evidence presented at the hearing of any counter-narrative of the events at Bellarmine Hall . . . . Thus, even if the hearing officer had excluded all testimony from witnesses not given during the hearing, the only remaining evidence would have supported the hearing officer's decision."  That assertion is demonstrably false.   The Hearing Officer's written decision noted several discrepancies in the evidence and testimony of multiple witnesses—some of which corroborated Plaintiff's narrative.  Moreover, that assertion implies that the Hearing Officer gave zero weight to Plaintiff's testimony and counter-narrative, and zero weight to the witnesses who recalled Plaintiff denying having any sexual contact with Complainant on or around October 31, 2021.

50.     It is undisputed that Hearing Officer Ward-Zanotto was the administrative officer solely responsible for handling Plaintiff's Integrity Formation hearing on November 12, 2021, in which he charged Plaintiff with multiple Code of Conduct violations all related to Plaintiff's consumption of alcohol on October 30, 2021 and/or October 31, 2021.  The deciding factor in the

COMPLAINT FOR DAMAGES - 15

**Law Offices of Howard L. Jacobs**
31111 Agoura Road Ste. 225
Westlake Village, CA
(805) 418-9892 (phone)
(805) 418-9899 (facsimile)

Hearing Officer's "Credibility Analysis" of each party and/or witness in this matter was how the consumption of alcohol impacted their recollection of events from October 30 and October 31, 2021. Because the Hearing Officer had previously investigated and sanctioned Plaintiff for drinking alcohol on the night in question, he was unavoidably biased towards Plaintiff's narrative of events—especially as they related to the consumption of alcohol.

51.    Defendant has since asserted that its Title IX Policy "does not prohibit a university official from serving as a decision-maker solely based on prior a disciplinary interaction with the involved parties." This misstates the rule. The decision-maker need only have a demonstrated bias, for or against either party in the case, that affected the outcome of the matter. Both Plaintiff and Complainant indicated that their memories of the alleged incident were affected by alcohol, but neither suggested they were in a state of black-out. However, the Hearing Officer determined that only Plaintiff's recollection of the incident was not credible. The Hearing Officer had a clear bias against Plaintiff as a result of being predisposed to Plaintiff's alcohol consumption that same night.

52.    The decision rendered by Defendant was based on a biased view of the evidence and testimony presented in this matter. In fact, the Hearing Officer never addressed the veracity of the alleged victim's claims, instead relying almost entirely on his faulty "Credibility Analysis" in reaching a decision. Notably, the Hearing Officer demonstrated a substantial gender bias, as he only credited female witnesses accounts – based upon hearsay – when addressing whether the nonconsensual sexual contact happened. Moreover, alleged victim's position on the alleged misconduct has undoubtedly been shaped by third-party influences, as it has evolved substantially since the morning following the alleged incident. Alleged has gone from remembering "nothing" to being able to recall a detailed account of misconduct—all the while supposedly being "asleep."

COMPLAINT FOR DAMAGES - 16

**Law Offices of Howard L. Jacobs**
31111 Agoura Road Ste. 225
Westlake Village, CA
(805) 418-9892 (phone)
(805) 418-9899 (facsimile)

Without *any* first-hand corroborating witnesses, and an onslaught of conflicting statements from the parties and witnesses, no reasonable person could find by a preponderance of the evidence that Plaintiff committed the alleged sexual misconduct.

**F.     Plaintiff's Appeal was Wrongfully Dismissed**

53.     Defendant determined that the sanctions imposed on Plaintiff were "appropriate for the findings" without citing any material reason other than they "were similar to sanctions issued in previous cases with similar findings."

54.     Defendant's Sexual Offenses Policy states that sanctions are "designed to end the conduct, prevent its recurrence, and remedy its effects on the Complainant and the University Community." In this instance, Plaintiff was found to have engaged in non-consensual sexual contact with alleged victim after he was considered to be in a state of black-out by the Hearing Officer.  The proposed sanctions are substantially disproportionate because they do not serve to end the conduct or prevent its recurrence.  To date, Plaintiff has no prior criminal history, no prior sexual assault history, and no disciplinary history prior to October 30, 2021. Since October 30, 2021, Respondent has remained in good standing with Defendant Seattle University and voluntarily removed himself from campus to avoid any potential conflict while maintaining a 4.0 GPA.

55.     Plaintiff alleges that Defendant failed to follow applicable procedures pursuant to its own Title IX Policy in this matter in violation of Plaintiff's procedural due process rights. Second, Plaintiff alleges that Defendant engaged in breach of contract regarding said documents. Finally, Plaintiff alleges that Defendant engaged in gender bias in violation of Title IX through its investigation and decision to suspend him from campus through September 2022, revoke his

COMPLAINT FOR DAMAGES - 17

**Law Offices of Howard L. Jacobs**
31111 Agoura Road Ste. 225
Westlake Village, CA
(805) 418-9892 (phone)
(805) 418-9899 (facsimile)

academic credits for the current quarter, and, in turn, cause the revocation of Plaintiff's student-athlete scholarship as a member of the Seattle University baseball team.

**G.** **Defendant Failed to Investigate Claims of Harassment and Bullying Against Plaintiff**

56.     On May 17, 2022, Plaintiff e-mailed Ms. Moffitt informing her that since the Hearing Decision issued by Mr. Ward-Zanotto, the alleged victim and her friend had been harassing and bullying Plaintiff whenever they saw him on campus.

57.     Plaintiff was even able to capture such behavior on video, including of alleged victim laughing at Plaintiff and Witness C flipping Plaintiff off.  Plaintiff expressed how this caused him further emotional distress.

58.     In response, Ms. Moffitt dismissed Plaintiff's complaint saying that she did not personally believe the behavior to meet the definition of "harassment or bullying as we have defined it" nor as "retaliation", nor "impeding [Plaintiff's] ability to be in class or participate in programs".  Plaintiff responded that alleged victim's friend had also messaged the entirety of Plaintiff's Instagram contacts, warning them that Plaintiff had been found guilty of sexual assault.

59.     In response to the additional evidence of harassment at the hands of alleged victim and her friends (including witnesses), Ms. Moffitt informed Plaintiff the next day that she would pass his "report/concern to the student conduct team".  To date, Plaintiff's concerns have not been addressed by Defendant.

**H.** **Defendant's Actions were Guided by fear of Negative Press**

COMPLAINT FOR DAMAGES - 18

60.     Defendant has been the subject of negative press amidst the "Me Too" movement, as well as the Catholic sex abuse scandals[3]:

# Seattle University's Systemic Support of Sexual Abuse

The Spectator Editorial Board | June 7, 2018

*****

# Police investigating reported Seattle University rape

Posted on **Thursday, February 1, 2018 - 12:36 pm** by **jseattle**

******

# School of Law Alumna Accuses Seattle U of Failure to Support Victims of Abuse

Myrea Mora and Logan Gilbert | May 26, 2021

[continued on next page]

---

[3] See https://seattlespectator.com/2018/06/07/seattle-universitys-systemic-support-sexual-abuse/; https://seattlespectator.com/2021/05/26/school-of-law-alumna-accuses-seattle-u-of-failure-to-support-victims-of-abuse/ (in which Dean of Students James Willette, who flatly denied Plaintiff's appeal of Mr. Ward-Zanotto's decision, is consulted in this article about sexual assault allegations on campus).

COMPLAINT FOR DAMAGES - 19

**Law Offices of Howard L. Jacobs**
31111 Agoura Road Ste. 225
Westlake Village, CA
(805) 418-9892 (phone)
(805) 418-9899 (facsimile)

After experiencing domestic abuse for months, Moreno reached out to Seattle U. She was unsure of what steps she should take in an effort to seek protection from her abuser Redwolf Pope. She states that she felt dismissed, ridiculed and undervalued in the coming months as the situation unfolded between Pope, the School of Law and university administration, a reoccurring failure of the university to effectively fight sexual abuse.

After fleeing Seattle in 2014 after graduating, Moreno says she spent many years dealing with the ridicule that followed her, and asserts that Pope had slandered her name to the Seattle U community and her connections in the law field.

When Pope was convicted of rape and voyeurism in New Mexico December 2020, Moreno finally felt she had gained the credibility she sought in order to come forward with her story.

61. Since these stories have come to light, and Defendant has had to publicly address the criticism of its own student body and the media, subsequent Title IX Complaints have rendered a finding of a violation against the respondents.

62. Defendant's actions in Plaintiff's case are no different: Defendant fears that if it does not find a violation, the alleged victim will go public with her allegations, bringing further unwanted negative attention and press to Defendant's doorstep.

## IV.     CLAIMS FOR RELIEF

### Count 1 – Violation of Constitutional Rights Under 42 U.S.C. § 1983

63. The above paragraphs are hereby incorporated by reference as though fully set forth herein.

64. Defendant intended to injure plaintiff and acted with ill will, spite and evil mind in depriving Plaintiff of his constitutionally protected liberty and property interest in his reputation, education, and scholarship by suspending Plaintiff and cancelling his Spring 2022 and Fall 2022 quarter classes.

65. Defendant's actions in banning plaintiff from Defendant's campus violated Plaintiff's procedural due process rights under the U.S. Constitution.

COMPLAINT FOR DAMAGES - 20

66.     Defendant violated Plaintiff's due process rights under the U.S. Constitution when it caused unnecessary delay in Plaintiff's Title IX proceedings.

67.     Defendant violated Plaintiff's due process rights under the U.S. Constitution when it failed to follow its own Title IX Policy.

68.     Defendant violated Plaintiff's due process rights under the U.S. Constitution when it failed to investigate legitimate claims of harassment and bullying by Plaintiff committed by alleged victims and her friends.

### Count 2 – Violation of Title IX 20 U.S.C. § 1681(a)

69.     The above paragraphs hereby incorporated by reference as though fully set forth herein.

70.     Defendant Seattle University, while a private non-profit institution, received federal financial assistance including Title IX funding.

71.     The acts and failures to act, perpetrated against Plaintiff amounted to a discrimination on the basis of gender.

72.     Specifically, Plaintiff avers that the facts set forth above, including but not limited to the procedural failures carried out by Defendant during the course of Plaintiff's Title IX hearing, cast articulable doubt on the outcome of the proceedings.

73.      Plaintiff avers that the erroneous outcome of the proceedings was motivated by gender bias in that the Hearing Officer's decision to seek the testimony of female students regarding hearsay information while not eliciting nor crediting the testimony of male students with relevant, direct, personal knowledge demonstrates a specific desire to credit the testimony of female students over male students.

COMPLAINT FOR DAMAGES - 21

**Law Offices of Howard L. Jacobs**
31111 Agoura Road Ste. 225
Westlake Village, CA
(805) 418-9892 (phone)
(805) 418-9899 (facsimile)

74.    Plaintiff avers that the erroneous outcome of the proceedings was motivated by Defendant's specific desire to find violations of sexual misconduct against male students such as Plaintiff with no regard for the veracity of the claims.

75.    Plaintiff avers that gender bias motivated Defendant to pursue claims against Plaintiff by alleged victim; but not investigate, or even take seriously, claims of retaliation and misconduct against alleged victim and Witness C by Plaintiff.

76.    Additionally, and in the alternative, Defendant was under outside pressure to hold male students accountable for sexual assault.  Specifically, Defendant has been the subject of negative media attention for its failure to properly address previous allegations of sexual assault on campus, as well as a culture of support for Catholic leaders accused of sexual misconduct.

77.    Additionally, and in the alternative, on information and belief, Defendant has a pattern or practice of independently bringing sexual misconduct cases against male students substantially more often than against female students [and finding those male students in violation of the Title IX Policy].  On information and belief, while Defendant frequently independently initiates Title IX/sexual misconduct investigations into male students based upon alleged victim complaints or third-party information brought to Defendant's attention, it rarely does so to female students.  This pattern or practice constitutes gender discrimination that led to the erroneous outcome and selective enforcement of the Title IX proceeding against Plaintiff.

### Count 3 – Breach of Contract

78.    The above paragraphs are hereby incorporated by reference as though fully set forth herein.

79.    Defendant holds out its Title IX Policy as a contract between the University and its student population.

COMPLAINT FOR DAMAGES - 22

Law Offices of Howard L. Jacobs
31111 Agoura Road Ste. 225
Westlake Village, CA
(805) 418-9892 (phone)
(805) 418-9899 (facsimile)

80.     There is a reasonable expectation that the students will adhere to the rules set forth in the conduct portion of the Title IX Policy.  Likewise, there is a reasonable expectation that Defendant follow its own rules in accordance with the Title IX Policy.

81.     That on several occasions dating between November 1, 2021 through at least May 18, 2022, Defendant Seattle University failed to adhere to specific provisions of the Title IX Policy as required during the course of Defendant's investigation of Plaintiff.

82.     That Defendant intended to injure Plaintiff and acted with ill will, spite and an evil mind when Defendant breached the contract between Defendant and Plaintiff.

83.     That Defendant's breach of the contract between Defendant and Plaintiff has caused Plaintiff irreparable harm to Plaintiff's reputation, education, and financial circumstances.

## V.     DAMAGES

84.     As a result of Defendant's conduct Plaintiff has suffered damages for his deprivation of his constitutional rights, deprivation of his right under Title IX, damages for breach of contract, damage to reputation, loss of property interest in his education, loss of financial support of his education, and mental and emotional distress to be established to the Court in excess of $250,000.00.

**WHEREFORE PREMISES CONSIDERED, Plaintiff prays that:**

1.     This Court issue a Temporary Restraining Order and Preliminary Injunction prohibiting Defendant Seattle University from enforcing its academic hold and cancellation of Plaintiff's classes pending further orders of the Court;

2.     This Court issue a permanent injunction prohibiting Defendant Seattle University from enforcing its suspension of Plaintiff;

COMPLAINT FOR DAMAGES - 23

3.  This Court issue a permanent mandatory injunction requiring Defendant Seattle University to purge Plaintiff's academic record of any reference to a finding of sexual misconduct;

4.  This Court enter a judgment against Defendant in an amount to be established to the Court, in excess of $250,000.00.

5.  This Court fashion any other appropriate equitable remedy;

6.  This Court award Plaintiff attorney's fees, costs of suit, and interest pursuant to 42 U.S.C. § 1988; and,

7.  This Court order any further relief to which Plaintiff may prove he is entitled.


Respectfully submitted,

DATED:      May 31, 2022          LINDSAY S. BRANDON

By:  /s/ Lindsay S. Brandon_____
LINDSAY S. BRANDON (WSBA 46759)
**LAW OFFICES OF HOWARD L. JACOBS**
31111 Agoura Road, Suite 225
Westlake Village, California 91361
(805) 418-9892 – telephone
(805) 418-9899 – facsimile
lindsay.brandon@athleteslawyer.com
*Attorneys for Plaintiff*

COMPLAINT FOR DAMAGES - 24